IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 4:14-cv-078 (Hampton) |
| | | 4:14-cv-105 (Hendrix) |
| | * | |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Maxine Hampton and Diane Hendrix were implanted with ObTape and assert that they suffered injuries caused by ObTape. Plaintiffs brought product liability actions against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused their injuries.[1] Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Mentor seeks summary judgment on all of Plaintiffs' claims, contending that they are time-barred under Minnesota law. For the reasons set forth below, Mentor's summary judgment motions (ECF No. 32 in 4:14-cv-78 and ECF No. 32 in 4:14-cv-105) are granted.

---

[1] Hampton and Hendrix assert their claims separately in two independent civil actions. Because the resolution of the summary judgment motions in both actions involves similar issues related to the Minnesota statute of limitations, the Court decides both motions in this single order.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

**I.   Maxine Hampton**

Dr. Mahesh Patel diagnosed Plaintiff Maxine Hampton with stress urinary incontinence.  Dr. Patel recommended surgery to treat Hampton's symptoms, and he implanted Hampton with ObTape on February 24, 2005.  Hampton's stress urinary incontinence improved after the surgery.

Hampton visited Dr. Patel in November 2007 complaining of hematuria, urinary tract infections, and brownish vaginal discharge.  Dr. Patel found that a portion of Hampton's ObTape had protruded into her vagina, and he recommended that she have

2

the protruded portion of her ObTape removed. *See, e.g.,* Patel Dep. 44:22-45:21, ECF No. 32-4 in 4:14-cv-78 (stating that Dr. Patel would have told Hampton that he wanted to remove the protruded portion of her ObTape to treat her symptoms); Hampton Dep. 131:6-9, ECF No. 32-6 in 4:14-cv-78 (stating that Hampton recalled Dr. Patel telling her that he would schedule her for an excision of her ObTape).

Dr. Patel removed the extruded portion of Hampton's ObTape on January 3, 2008. He saw Hampton for a follow-up visit on January 16, 2008 and noted that her discharge symptoms had improved and that she had very little discharge; according to Dr. Patel, it did not "look like it was an infected process." Patel Dep. 49:16-24, ECF No. 33-3 in 4:14-cv-78. Dr. Patel informed Hampton that the protrusion may have caused "an infection or irritation or discharge," though he did not tell her why the protrusion happened. *Id.* at 87:3-15. At some unspecified point, Hampton suffered a bladder infection and a kidney infection, and she saw "other doctors" to try to determine the cause of those infections. Hampton Dep. 240:19-241:7, ECF No. 33-4 in 4:14-cv-78.

Hampton asserts claims for strict liability (design defect, manufacturing defect, and failure to warn); negligence; breach of express warranty; breach of implied warranty; common law fraud; constructive fraud; and negligent and intentional

3

misrepresentation. Mentor seeks summary judgment on all of Hampton's claims, contending that they are time-barred. Hampton does not contest summary judgment on her warranty claims, so Mentor is entitled to summary judgment on those claims.

## II. Diane Hendrix

Dr. Jitendra Shah diagnosed Plaintiff Diane Hendrix with stress urinary incontinence and recommended a sling implant. Dr. Shah implanted Hendrix with ObTape on August 29, 2005. At her two follow-up visits following the surgery, Hendrix reported no complaints. But in March 2007, Hendrix returned to Dr. Shah reporting recurrent vaginal infections that did not respond to antibiotic treatment. Dr. Shah examined Hendrix and found that her ObTape had eroded. Dr. Shah told Hendrix that her ObTape had eroded and that he needed to remove the eroded portion of ObTape. Hendrix understood that Dr. Shah intended to "clip" a portion of the sling, which she referred to as a band. Hendrix Dep. 41:21-25, 59:13-60:1, ECF No. 35-5 in 4:14-cv-105. Dr. Shah excised a portion of Hendrix's ObTape on March 16, 2007. Dr. Shah did not tell Hendrix why her ObTape had eroded. Hendrix came to suspect that "the doctors actually done something to [her]." *Id.* at 214:20-215:6.

In August 2007, Hendrix returned to Dr. Shah complaining of vaginal discharge. She was concerned that her ObTape had eroded again. Dr. Shah examined Hendrix and did not find an erosion at

4

that time. And in May 2008, Hendrix saw Dr. Shah because her husband thought he could feel the sling during intercourse, and she wanted to make sure her ObTape had not eroded again. Dr. Shah did not find an erosion at that time.

In 2010, Hendrix sought treatment from another doctor, Dr. Fareesa Khan, for bleeding, discharge, left groin pain, and fever. These symptoms occurred one or two days after Hendrix noticed that a gauze-looking material had come out of her vagina. Dr. Khan determined that ObTape was the cause of Hendrix's infection.

Hendrix asserts claims for strict liability (design defect, manufacturing defect, and failure to warn); negligence; breach of express warranty; breach of implied warranty; common law fraud; constructive fraud; and negligent and intentional misrepresentation. Mentor seeks summary judgment on all of Hendrix's claims, contending that they are time-barred. Hendrix does not contest summary judgment on her warranty claims, so Mentor is entitled to summary judgment on those claims.

## DISCUSSION

On February 26, 2014, Hampton served Mentor with a Complaint captioned in the Hennepin County District Court of the State of Minnesota. On April 9, 2014, Hendrix served Mentor with a Complaint captioned in the Hennepin County District Court of the State of Minnesota. Mentor removed both actions to the

U.S. District Court for the District of Minnesota. The cases were later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Hampton's claims. *See Cline v. Mentor*, No. 4:10-cv-5060, 2013 WL 286276, at *7 (M.D. Ga. Jan. 24, 2013) (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

**I.   Strict Liability and Negligence Claims**

Mentor contends that Plaintiffs' strict liability and negligence claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). The statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05 subd. 1(5) (establishing six-year limitation period for personal injury claims not arising in contract or strict liability).

Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's

6

product, act, or omission.'"  *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law).  "A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Id.*  For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169.  Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility.  *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, both Plaintiffs contend that they did not learn of a connection between ObTape and her injuries until 2009 or later – either based on a television commercial regarding mesh complications or a consultation with a doctor. But both Plaintiffs knew that they suffered some injuries related to ObTape before then.

In January 2008, Hampton's doctor excised a portion of Hampton's eroded ObTape to treat her symptoms, which included

7

brownish vaginal discharge. Hampton was told at the time that a portion of her ObTape had to be removed. After the excision procedure, Hampton's discharge symptoms improved. Therefore, Hampton knew or should have known by January 2008 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than six years later, in February 2014.

In March 2007, Hendrix visited her doctor complaining of recurrent vaginal infections. Her doctor found an erosion of Hendrix's ObTape and told her that he needed to remove it. Hendrix was aware that a portion of her sling needed to be "clipped," and her doctor performed the excision procedure on March 16, 2007. Therefore, Hendrix knew or should have known by March 2007 that there was a likely connection between ObTape and some of her injuries.[2] She did not file her complaint until more than seven years later, in April 2014.

In summary, each Plaintiff connected (or had enough information to connect) at least some of her injuries to ObTape more than six years before she filed suit. Accordingly, Plaintiffs' strict liability and negligence claims are time-barred under Minnesota law.

---

[2] The fact that Hendrix is not seeking damages based on the March 2007 erosion does not change this conclusion. As the *Klempka* court observed: "A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Klempka*, 963 F.2d at 170.

Plaintiffs seem to contend that it is not enough that they made (or had enough information to make) a connection between ObTape and some of their injuries. Rather, they appear to argue that they must have been on notice that a defect in ObTape caused their injuries. Hampton acknowledges that Dr. Patel told her she had a protrusion of her ObTape; she emphasizes that he did not tell her *why* it happened. And Hendrix acknowledges that Dr. Shah told her that her ObTape had eroded, but she asserts that no doctor told her what caused the erosion. But Plaintiffs did not point to any Minnesota authority holding that a plaintiff must be on notice that her specific injuries were caused by a product defect. Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product. *Klempka*, 963 F.2d at 170.

Plaintiffs nonetheless contend that two Eighth Circuit cases and one Minnesota District Court case support denial of summary judgment on their negligence and strict liability claims. The Court disagrees. First, Plaintiffs point to *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), where the plaintiffs alleged that they suffered lung damage due to their exposure to a toxic chemical at their workplace. But there, unlike here, the plaintiffs' doctors initially told the plaintiffs that there was no correlation between their symptoms

and the chemical. *Id.* at 399. The Eighth Circuit thus concluded that the plaintiffs' claims did not accrue until the cause of the plaintiffs' injuries was rationally identified. Second, Plaintiffs point to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004). In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek. The Eighth Circuit reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco. *Id.* at 922. Third, Plaintiffs point to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013). In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage. The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection. The district court noted that the "first article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007. *Id.*

*Hildebrandt*, *Tuttle*, and *Huggins* are all distinguishable from Plaintiffs' cases. In *Hildebrandt*, *Tuttle*, and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else,

10

and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury. In contrast, here, both Plaintiffs suffered injuries that were connected to an erosion of the ObTape, and both Plaintiffs knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of their injuries by the time of their excision procedures.

Plaintiffs argue that even if Minnesota's discovery rule does not save their strict liability and negligence claims, fraudulent concealment should toll the statute of limitations. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, both Plaintiffs knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of their injuries by the time of their excision procedures. A reasonable person in that

11

situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. Hampton argues that she sought treatment from other doctors at some undisclosed time to determine the cause of bladder and kidney infections she now attributes to ObTape. But she did not point to evidence that she took any steps to investigate her potential claims related to the discharge symptoms and the January 2008 excision procedure. Hendrix pointed to evidence that she went to Dr. Shah two more times after her March 2007 excision procedure because she suspected another erosion; during those visits, Dr. Shah could not see or feel another erosion. Hendrix suspected that her problems were related to ObTape and that Dr. Shah had done something wrong, but she did not point to evidence that she followed up on that suspicion until she suffered another erosion two years later and sought treatment from Dr. Khan. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations for either Plaintiff.

Plaintiffs did not file their complaints within six years after their claims accrued. Their strict liability and negligence claims (including their negligent misrepresentation claims) are therefore time-barred.

## II. Fraud and Intentional Misrepresentation Claims

Mentor also seeks summary judgment on Plaintiffs' fraud, fraudulent concealment, and intentional misrepresentation claims. The statute of limitations for fraud claims is six years. Minn. Stat. § 541.05 subd. 1(6). A fraud cause of action "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." *Id.* But "the facts constituting fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered." *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 674 (D. Minn. 1993) (quoting *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962)). "The failure to actually discover the fraud does not toll the statute of limitations if it is inconsistent with reasonable diligence." *Id.;* accord *Blegen v. Monarch Life Ins. Co.*, 365 N.W.2d 356, 357–58 (Minn. Ct. App. 1985). Plaintiffs "carry the burden of proving that they did not discover the facts constituting fraud within six years before commencement of the action." *Veldhuizen*, 839 F. Supp. 674. "They must also show that they could not have discovered the fraud through the exercise of reasonable diligence." *Id.*

As discussed above, neither Plaintiff filed her complaint within six years after learning of a connection between ObTape and her injuries. They both knew of, strongly suspected, or had enough information to know of a connection between ObTape and at

13

least some of their injuries by the time of their excision procedures. Again, neither Plaintiff pointed to evidence that she exercised reasonable diligence to investigate her potential claims even though she knew (or had enough information to know) there was a connection between her injuries and the ObTape. Plaintiffs also did not point to evidence that they could not have discovered enough facts to support their fraud and intentional misrepresentation claims had they started investigating the connection they made (or had enough information to make) between ObTape and their injuries within a reasonable time after they discovered the connection. For these reasons, the Court finds that Plaintiffs' fraud and intentional misrepresentation claims are time-barred.

## CONCLUSION

As discussed above, Mentor's summary judgment motions (ECF No. 32 in 4:14-cv-78 and ECF No. 32 in 4:14-cv-105) are granted.

IT IS SO ORDERED, this 15th day of December, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA